**Svetlana KOZLOVSKA, a/k/a Lauren Holmstadt, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 10–CM–1268.

District of Columbia Court of Appeals.

Submitted Sept. 22, 2011.

Decided Nov. 3, 2011.

800

Anna B. Scanlon was on the brief for appellant.

Ronald C. Machen Jr., United States Attorney, Roy W. McLeese III, Elizabeth Trosman and Ademuyiwa Bamiduro, Assistant United States Attorneys, were on the brief for appellee.

Before OBERLY, Associate Judge, RUIZ, Associate Judge, Retired, and KING, Senior Judge.

RUIZ, Associate Judge, Retired:

Svetlana Kozlovska, also known as Lauren Holmstadt, was convicted of one count of unlawful entry, in violation of D.C.Code § 22–3302 (2001), in a bench trial. Appellant challenges her conviction, arguing that the trial court erred in admitting into evidence over objection, the hearsay statements of the property maintenance staff that contradicted her defense. For the reasons that follow, we conclude that the error was harmless and affirm.

## I. Facts

Ms. Leona Loukota, the property manager for 2400 Pennsylvania Avenue Apartments, testified that she found appellant sleeping in the stairwell of the apartment building in mid-April of 2010.[1] Ms. Loukota escorted appellant outside and told her that she was not permitted to return to the building, to which appellant nodded in agreement. Approximately one month later, Ms. Beverly Avelar, the leasing consultant for the apartment building, encountered appellant sitting in the lobby. Ms. Avelar contacted Ms. Loukota and, upon her direction, called the Metropolitan Police Department (MPD). MPD officers arrived and informed Ms. Avelar that she should draft a barring notice to be issued against appellant. Ms. Avelar typed the barring notice. Appellant initially refused to sign the barring notice, but did so after

---

1. The apartment building is a property where access is controlled, and it can only be entered with use of a security key. Ms. Loukota testified that she is the sole person with authority to give staff members permission to let other persons in the building.

speaking to the police. On June 17, 2010, Ms. Loukota was informed by a contractor that he and the maintenance engineer, Jeffrey Gordon, had found a "young lady in the apartment," with several pieces of luggage. Ms. Loukota immediately called the police, who arrived shortly thereafter and arrested appellant for unlawful entry and removed her from the building.

At trial, appellant did not contest that she had previously been barred from the apartment building, but asserted that she was later allowed to enter the apartment by "the apartment manager's super," named "Jeffrey," to store her luggage in a vacant apartment, and was provided a laundry card to the building. Ms. Loukota testified that she had not authorized any staff personnel to allow appellant to enter the building and confirmed with her staff that they did not do so.

At the close of the bench trial, the judge credited Ms. Loukota and incorporated her testimony as findings of fact regarding "her authority at the building, in terms of her observations of the appellant in mid-April, as well as on the date in which the appellant was arrested, June 17th." The court found Ms. Avelar to be an equally credible witness and incorporated her testimony as findings of fact, specifically regarding "her process in terms of typing up the barring notice ... her authority to be able to bar individuals ... [and] her not giving any authority to the appellant to be on the premises." The trial judge also found MPD Officer George Ellison to be credible and incorporated his testimony as findings of fact regarding his interactions with appellant and appellant's statements on the day when she was found on the property and was placed under arrest. The court did not credit the testimony of appellant because it was "inconsistent," and appellant "jump[ed] from one time period to another, to at times reference things that she says happened in the

spring and then later said they happened at the time she was arrested."

The trial court found beyond a reasonable doubt that appellant entered the property voluntarily and on purpose, not by mistake or accident, and against the will of the persons lawfully in charge of the premises. The court found appellant guilty of one count of unlawful entry in violation of D.C.Code § 22–3302, and sentenced her to thirty days in jail (execution of sentence suspended), with one year of supervised probation, and $50 to be paid to the Victims of Violent Crime Compensation Fund. Appellant filed a timely notice of appeal.

## II. Hearsay Testimony

 We review evidentiary rulings for abuse of discretion, and a trial court's ruling may be reversed only if the trial court's exercise of discretion is clearly erroneous. *See Brown v. United States,* 840 A.2d 82, 88 (D.C.2004) (citing *Pickett v. United States,* 822 A.2d 404, 405 (D.C. 2003); *Malloy v. United States,* 797 A.2d 687, 690 (D.C.2002)). However, whether a statement satisfies a particular hearsay exception is a question of law that we review *de novo. See Blackson v. United States,* 979 A.2d 1, 6 (D.C.2009) (citing *Dyson v. United States,* 848 A.2d 603, 611 (D.C. 2004)). Appellant contends that the trial court erred in admitting, over defense counsel's objection, the hearsay statement testified to by Ms. Loukota, that her staff confirmed that they did not allow appellant to enter the building. The relevant testimony, objection and ruling, were as follows:

> **PROSECUTOR:** To your knowledge, what authority, if any, did any employee of yours give to let the defendant stay—?
>
> **MS. LOUKOTA:** They didn't gives her any because I, I asked them. Because

there was a statement made that our maintenance person had let the young lady in the apartment and I asked them and they said no.

**DEFENSE COUNSEL:** I'd object as to hearsay, your honor.

**THE COURT:** Well, when you say a statement was made by whom? You said there was a statement made that the maintenance had let her in by—

**MS. LOUKOTA:** The young lady that was in the apartment that shouldn't have been.

**THE COURT:** By the woman here in court?

**MS. LOUKOTA:** Yes. Yes.

The court overruled the objection, but inquired of the witness:

**THE COURT:** I'm sorry, I have to ask a follow up question to my ruling. Did you hear her make that statement or someone told you?

**MS. LOUKOTA:** No, I was there when she made the statement to the police officer.

**THE COURT:** You heard it?

**MS. LOUKOTA:** Yes.

**THE COURT:** Okay. So that objection is still overruled.

■ Before reviewing the admissibility of the statement, we must first establish the specific statement to which counsel was objecting—that of Ms. Loukota testifying that appellant told the police officer that she was given permission to enter the building by the maintenance staff, which appears to have been the focus of the trial court's inquiry—or that of Ms. Loukota that she asked the maintenance staff whether they allowed appellant into the building and they said no. We think appellant properly focuses on the out-of-court statement of the maintenance staff, as appellant's own statement is admissible as an admission of a party opponent. *See McCoy v. United States,* 760 A.2d 164, 179 (D.C.2000) ("This exception to the hearsay

rule operates on a theory that the declarant can refute the admission or explain its circumstances by taking the stand."). In most cases, the defendant's statement is introduced because it helps the government's case; in this case, however, the out-of-court statement corroborated appellant's testimony at trial, and there was therefore no reason for appellant to object to admission of her own consistent out-of-court statement.

■ The statement by the maintenance workers that they had not given appellant permission to enter the apartment building is hearsay because it is an out-of-court statement offered for the truth of the matter asserted. *See Mercer v. United States,* 864 A.2d 110, 117 (D.C.2004). The statement addressed the only contested issue in the trial, whether appellant had been authorized to enter 2400 Pennsylvania Avenue Apartments after having been previously barred. Therefore, the out-of-court statement could be admitted into evidence only if it came within an exception to the hearsay rule.

■ Reviewing the record, we conclude that the out-of-court statement was admitted in court for the truth of the matter asserted and does not fall within any exception to the hearsay rule. The government does not contend otherwise. What the government contends is that any error was harmless because the "remaining evidence overwhelmingly supported appellant's conviction, and the trial court did not rely on the challenged statement in rendering its verdict." To conclude that an error is harmless, we must find it *"highly probable* that [that] error did not contribute to the verdict." *In re Ty.B.,* 878 A.2d 1255, 1267 (D.C.2005) (quoting *United States v. Tussa,* 816 F.2d 58, 67 (2d Cir.1987)); *see Clark v. United States,* 593 A.2d 186, 192 (D.C.1991). Accordingly, "analysis under the harmless error doc-

trine should not be limited to superficial inquiry as to whether the same verdict would have been possible absent the tainted evidence." *Brooks v. United States,* 367 A.2d 1297, 1309 (D.C.1976). Indeed, we must be able to say with "fair assurance" that "after pondering all that happened" the judgment was not substantially swayed by the erroneously admitted hearsay statement; or, put another way, if we are left "in grave doubt" of its effect, then it is impossible to conclude that substantial rights of the appellant were not affected and the conviction cannot stand. *Kotteakos v. United States,* 328 U.S. 750, 764–65, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

■ If this had been a jury trial, the admission of hearsay evidence that directly contradicted the defense based on appellant's testimony that the "super" had allowed her access to the building, would have required reversal and a new trial. But in this bench trial, where the judge carefully set out her reasoning, we can conclude that the error was harmless. Although the trial court credited and incorporated the hearsay statement as part of her findings,[2] we can say with reasonable assurance that it made no appreciable difference to the outcome of the case. *Cf. In re Ty.B.,* 878 A.2d at 1267 (noting that in neglect proceeding where inadmissible hearsay statements were entered over the father's objection, "[i]t may be that an impartial trier of fact *could* reasonably have found for the District if the hearsay had been excluded ... but where ... the inadmissible predominated over the admissible, the judgment cannot stand.")

■ The government did not refer to the maintenance staff's out-of-court statement in its closing argument, or in rebuttal, after defense counsel referred to appellant's claim that "Jeffrey" had allowed her to use the apartment. Similarly, the trial court did not rely on (or even mention) the hearsay statement in rendering the verdict. Instead, the court found that appellant had not been given permission to enter the building after the barring order had been issued because appellant's testimony was not credible, noting its inconsistencies and "find[ing] this description of a super giving [appellant] permission to ... use that apartment as storage ... to [not] be credible at all." Thus, the trial court found, there was "no basis for [appellant] to have a lack of knowledge that she was still going into the building against the will of those who had the authority to give her permission, that is both Ms. Lakouta (sic) and Ms. Avelar." "Any 'factual finding anchored in credibility assessments derived from personal observations of the witnesses is beyond appellate reversal unless those factual findings are clearly erroneous.'" *McCraney v. United States,* 983 A.2d 1041, 1061 n. 65 (D.C.2009) (quoting *United States v. McNeal,* 955 F.2d 1067, 1072 (6th Cir.1992)). Here, the trial judge's findings of fact, based on an assessment of appellant's credibility, were not clearly erroneous. As we can say with fair assurance that the erroneously admitted hearsay statement did not substantially affect the verdict, we conclude that the error was harmless.

For the foregoing reasons, the judgment of the Superior Court is hereby

*Affirmed.*

---

2. Specifically, the trial court found that, "The manager, Ms. Lakota, (sic) never gave the defendant authority to be there, nor did, after she heard the defendant make a statement that a maintenance person had let her in, she asked the employees whether they had, and she determined that no employees had let the defendant into the apartment."